# Vandivort *v.* The Pittsburgh, Harmony, Butler & New Castle Railway Co., Appellant.

*Contracts—Street railway companies—Contract to maintain stop on premises—Breach—Measure of damages.*

1. A written agreement between a street railway company and the owner of land, by which the former in consideration of the grant of a right of way agreed to pay a stipulated sum in cash and also to maintain a stop on the premises of the land owner, will be enforced for the benefit of the land owner, although no definite location for the stop was designated.

2. In such case, while equity will not compel the maintenance of the stop, if in the judgment of the railway company the proper, safe, convenient or economical operation of the road required or made desirable the abandonment of the stop, nevertheless the company will be responsible in damages.

3. In such case, the measure of damages is the additional value which would have accrued to the plaintiffs' land had the stop been maintained thereon.

Argued March 16, 1915. Appeal, No. 4, Oct. T., 1915, by defendant, from judgment of C. P. Butler County, March T., 1914, No. 30, on verdict for plaintiff in case of Margaret Vandivort, W. F. Vandivort and C. D. Vandivort, v. The Pittsburgh, Harmony, Butler and New Castle Railway Company, of Butler, Pa. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Assumpsit for breach of contract. Before REIBER, J.
The opinion of the Supreme Court states the case.
Verdict and judgment for plaintiff for $1,800. Defendant appealed.

*Errors assigned* were various rulings on evidence and answers to points.

*Walter Lyon,* with him *W. D. Brandon* and *J. Campbell Brandon,* for appellant.

*John R. Henninger,* for appellees.

OPINION BY MR. JUSTICE MOSCHZISKER, April 19, 1915:
By a written agreement dated May 4, 1906, the plaintiffs granted a right of way for a street railway through a piece of land owned by them; the line was constructed and is now being operated by the defendant company; one of the stipulations in the contract was that a stop should be maintained upon the premises of the plaintiffs; the defendant refused to maintain this stop, whereupon the plaintiffs brought an action for damages; they recovered a verdict, upon which judgment was entered, and the defendant has appealed.
When the provision, "A stop to be on the premises,"

is read with its context, it is clear that this was intended for the benefit of the owners of the land, and not as a privilege to the railway company. While no definite location for the stop is designated in the written contract, yet the agreement to maintain it is sufficiently clear, and cannot be avoided as "too vague and uncertain" because it fails to specify just where the stop is to be or other particulars in reference thereto; for the management of the defendant road must always have the right to make reasonable regulations as to how its trains shall be run, whether as locals or otherwise, and, also, in the absence of an express location in the right of way contract, it would be for the company to determine upon the most convenient place for the stop. Furthermore, if, in its judgment, the proper, safe, convenient or economical management of the railway required or made desirable an abandonment of the stop on the plaintiff's premises, the defendant could act accordingly, and, though contracted for, equity would not compel the maintenance of the stop; but, under the facts at bar, considering those offered and rejected as well as those accepted in evidence, upon this abandonment, the defendant company was liable for the loss suffered by the plaintiffs, and, the measure of damages is, as in other cases of this character, the additional value which would have accrued to the plaintiffs' land had the stop been maintained thereon: See Watterson v. Allegheny Valley R. R. Co., 74 Pa. 208; Brown v. Pittsburgh, Carnegie & Western R. R. Co., 29 Pa. Superior Ct. 131; Texas & Pacific Ry. Co. v. Marshall, 136 U. S. 393, 405.

The agreement granting the right of way and releasing damages was signed in consideration not only of the cash sum then paid, but of "the benefits to be derived from the location, construction and operation of a railway through their land," and, no doubt, the benefit to be derived from the proposed stop was taken into consideration in fixing the amount of money paid by the railway and accepted by the owners of the land; in other

words, had the railway company not agreed to grant the stop, and thus add to the value of the plaintiffs' farm, it is but reasonable to assume that it would have been obliged to pay a correspondingly higher cash consideration.

It is not necessary to determine whether the plaintiffs were entitled to a freight as well as a passenger stop, for the trial court ruled that they had a right to the latter only, and so instructed the jury. A considerable part of the testimony produced by the plaintiffs, in relation to the damages, was based upon and confined to a stop for passenger purposes only; hence, the court below did not err in refusing to affirm points which assumed a contrary state of fact. None of the cases relied upon by the appellant is applicable here; and we see no merit in any of the assignments of error.

The judgment of the court below is affirmed.